[Crim. No. 7911. Second Dist., Div. Four. Feb. 21, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. CHARLES WOMACK, Defendant and Appellant.

Cary G. Branch for Defendant and Appellant.

Stanley Mosk, Attorney General, and S. Clark Moore, Deputy Attorney General, for Plaintiff and Respondent.

JEFFERSON, J.—In an information filed by the District Attorney of Los Angeles County defendant was charged with the illegal possession of heroin in violation of section 11500 of the Health and Safety Code.

Defendant pleaded not guilty. Trial was by the court, trial by jury having been duly waived by defendant personally, and by all counsel. The cause, pursuant to stipulation of defendant and counsel, was submitted to the court on the testimony contained in the transcript of the proceedings had at the preliminary hearing and both sides reserved the right to produce additional testimony. Counsel reserved all objections.

At the commencement of the trial the judge indicated for the record that he had read and considered the evidence produced at the preliminary hearing. Additional evidence offered at the trial consisted of the testimony of a witness called on behalf of the People. No testimony or additional evidence was offered by defendant or in his behalf. Defendant was found guilty as charged. A probation report was ordered. Defendant's motion for a new trial was denied. Probation was denied and defendant was sentenced to the state prison for the term prescribed by law.

Officer Merrill Walker testified he had received information from a confidential informant that a male Negro approximately 25 years old, about six feet tall, with a heavy build, an amputated finger, wearing a dark suit, dark trousers, dark hat and a red sport shirt, was in a vacant lot to the rear of approximately 445 East 105th Street, peddling heroin. The officer further testified that the person's name was "Womack" and that the heroin was under a tarpaulin in this vacant lot. The officer further testified defendant did not live in the area and from other sources he learned that there were known "hypes" in the area. Officer Walker and his partner Officer Burkland proceeded to the vacant lot where they found the above described defendant seated on a stool. He further testified there were three other persons present including one Moody Brown. There was also a tarpaulin which was located approximately 12 inches to the left of defendant. The officers testified they identified themselves and asked defendant his name. Defendant stated it was Charles Womack; that he lived at an address on 101st Street. When asked who lived

in the house, he said he did not know. Officer Walker and his partner questioned Brown and he acknowledged he had been arrested for using heroin and was presently using it. The officer further testified he observed defendant was dressed in a dark sweater, dark trousers, dark hat, a red sport shirt and was wearing no shoes and he was a Negro.

Officer Burkland testified he raised up the edge of the tarpaulin and saw a glass vial under the tarpaulin in which were a number of capsules containing a white powder. Officer Merrill testified he formed the opinion the capsules contained heroin.

Officer Merrill testified that on the day following the arrest he had a conversation with defendant in which defendant stated he was just "holding" the narcotics for a friend of his and had placed the capsules under the tarpaulin. Defendant stated further he had "held" narcotics on several occasions prior to this and he usually received five to ten dollars for "holding" the stuff "for the man." Defendant was asked the name of the man and defendant stated he would rather not tell the officer. The officer further testified the vial contained 42 capsules of heroin. The vial was clean; there was no dust or dirt or debris of any kind outside the vial. The area where the vial was found was an unfenced vacant lot.

Defendant contends the trial court erred in admitting illegally obtained evidence. We must disagree. The evidence was legally obtained. The officer had reasonable cause to make the search and the arrest. ██ As stated in *People* v. *Ingle,* 53 Cal.2d 407, 412 [2 Cal.Rptr. 14, 348 P.2d 577]: "Reasonable or probable cause for an arrest has been the subject of much judicial scrutiny and decision. There is no exact formula for the determination of reasonableness. Each case must be decided on its own facts and circumstances [citations]. . . . ██ Reasonable cause has been generally defined to be such a state of facts as would lead a man of ordinary care and prudence to believe and conscientiously entertain an honest and strong suspicion that the person is guilty of a crime. [Citations.] . . . ██ The test is not whether the evidence upon which the officer acts in making the arrest is sufficient to convict but only whether the person should stand trial. [Citation.] ██ Where an arrest is lawful the search incident thereto is not unlawful merely because it precedes rather than follows the arrest. [Citations.]"

██ The officer had information from a confidential informant of the description of defendant, his name and of the

location of the heroin on a vacant lot, underneath a tarpaulin. With defendant was Moody Brown who admitted he was then using heroin. This was a violation of Health and Safety Code section 11721. The officers had probable cause to believe that he was an addict and was committing an offense in their presence and that in the past Brown had possessed heroin. In *People* v. *Elliott,* 186 Cal.App.2d 185, 189 [8 Cal.Rptr. 716], the condition of an appellant's eyes and his statement that he had used heroin about 40 days before was held sufficient to justify a belief on the part of the officers that a defendant was an unlawful user and addicted to the unlawful use of narcotics.

Once the officers established probable cause for the arrest of Brown, they had the right to search the immediate area. (*People* v. *Lawrence,* 149 Cal.App.2d 435, 445-446 [308 P.2d 821]; *People* v. *Ruiz,* 146 Cal.App.2d 630, 634 [304 P.2d 175].)

Defendant next contends the court erred in refusing to strike the testimony of the officer after the identity of the informant was refused. This contention is also untenable.

As stated in *People* v. *McMurray,* 171 Cal.App.2d 178, 183 [340 P.2d 335]: "Disclosure is required where the informer participated in the crime with which the defendant is charged; where he took no part in the crime but was an eyewitness; where the informer's communication was the only justification for the action of the police and the informer did nothing more than give the police information leading to an arrest made without a warrant and alleged to have been unlawful; where, in view of the evidence, the informer would be a material witness on the issue of guilt and nondisclosure of his identity would deprive the defendant of a fair trial.

On the other hand, where the arrest is valid apart from the information received from the informer, the latter's identity need not be revealed. [Citations.] In other words, it is not necessary to reveal the identity of an informer who merely points the finger of suspicion at a defendant and an arrest follows which is based on reasonable cause other than the information received from the informer. [Citations.]"

In the instant case the evidence was ample, apart from that received from the informant, to show reasonable cause. The court did not err in either failing to strike the testimony of the police officer concerning the information received from the informant or in refusing to allow disclosure of his identity.

(*People* v. *White*, 167 Cal.App.2d 794, 799 [334 P.2d 963] ; see *People* v. *McShann*, 50 Cal.2d 802, 808 [330 P.2d 33].)

Defendant also contends that the trial court erred when defendant was held to answer on incompetent evidence. We have already concluded the evidence upon which defendant was found guilty was legally obtained, and therefore he was held to answer on competent evidence.

The judgment of conviction and order denying defendant's motion for a new trial are affirmed.

Burke, P. J., and Balthis, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 18, 1962.