[Crim. No. 5015.   First Dist., Div. Two.   Oct. 18, 1965.]

THE PEOPLE, Plaintiff and Respondent, v. JOSEPH LOUIS JONES, Defendant and Appellant.

Carroll, Hirshon & Gerhardt and John S. Gerhardt for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Albert W. Harris, Jr., Assistant Attorney General, and Michael R. Marron, Deputy Attorney General, for Plaintiff and Respondent.

TAYLOR, J.—On this appeal by defendant, J. L. Jones, from a judgment of conviction entered on a jury verdict finding him guilty of furnishing marijuana to a minor (Health & Saf. Code, § 11532), the only question is whether the tape recording of a telephone conversation between defendant and the minor was admitted in violation of the rule announced in *People* v. *Dorado,* 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361].

Since no contentions are raised concerning the sufficiency of the evidence, a brief review of the pertinent facts will suffice. On October 13, 1964, defendant's sister-in-law, Mrs. Rodriguez, entered the locked bedroom of her 16-year-old son Richard. In making up the bed, Mrs. Rodriguez discovered some loose marijuana together with cigarette papers in a box under the mattress. She put these items in a paper bag and then searched the room. Among Richard's personal effects in a cardboard box in the closet, Mrs. Rodriguez found several small newspaper-wrapped packages and she placed these in another paper bag. When Richard discovered that his mother had found the marijuana, he asked her not to think that the

marijuana belonged to his uncle, the defendant. She kept the marijuana hidden until a few days later when she reported the matter to Richard's juvenile probation officer who, in turn, contacted the narcotic investigators of the San Jose Police Department.

On October 16, 1964, Officer Ewing of the San Jose Police Department went to the Rodriguez home and received the two paper bags containing the items Mrs. Rodriguez had found in Richard's room. Subsequent examination in the crime laboratory conclusively established that the material was marijuana. On October 20, 1964, Officer Ewing returned to the Rodriguez home to take Richard into custody. Richard was taken to juvenile hall where he volunteered the fact that defendant had furnished him the marijuana. The next day, Richard again told Officer Ewing that he had received the marijuana from defendant.

Officer Ewing obtained defendant's telephone number from Mrs. Rodriguez and on November 3 and 4 placed telephone calls to defendant and recorded the conversations between Richard and defendant, with Richard's consent. The recording of the second of these conversations was admitted into evidence, played for the jury, and constitutes the basis for defendant's claim of prejudicial error on appeal.

In the recording, Richard told his uncle that he was in custody and would be prosecuted for possession of marijuana and did not want to pay the penalty by himself since the contraband was not his. Defendant told Richard to keep his mouth shut and not to turn him over to the police. When Richard indicated to his uncle that his mother had also told the police that the marijuana belonged to defendant, defendant answered that she had not told them since he had not been questioned by the police and added that his wife, Mary, also knew it but did not say anything. When defendant said that the police knew that the marijuana did not belong to Richard, Richard agreed, stating that this was because the police knew it belonged to defendant. Defendant replied: "They don't know it. They can't prove it." When Richard stated that the marijuana belonged to defendant and that he had only been holding it for him, defendant did not deny it. After Richard indicated that he would not spend time in jail for nothing, and asked what he would get out of it, defendant promised to send him some money.

At the trial, Richard initially tesified for the prosecution. He admitted possession of the marijuana but stated that de-

fendant did not furnish it. He stated that he had received it from someone whose identity he could not reveal. Richard stated that his prior testimony before the Grand Jury was not truthful and on the prosecution's claim of surprise, the court allowed his impeachment.

Thereafter, Richard admitted he had testified before the Grand Jury that he had received the marijuana from defendant on October 13, 1964, in the form in which it was found by his mother under the mattress and in the closet, and that at the time Richard knew the substance was marijuana because defendant had told him so. He also admitted the two telephone conversations with defendant in the presence of Officer Ewing who recorded the conversations with his consent. He denied having told his mother he had received the marijuana from defendant but admitted that shortly after the marijuana was found in his room, he did tell Officer Ewing he had obtained the marijuana from defendant.

Defendant took the stand and denied he had ever furnished marijuana to his nephew. His explanation of his telephone conversations with Richard was that he was only trying to help Richard by telling him that the less evidence the police had, the better would be Richard's chances of escaping punishment. He indicated that he told Richard not to turn him over to the police because he did not want the boy to involve him in anything that he had nothing to do with. He further explained he promised to send his nephew some money because he knew the boy would need it while in custody. Defendant attributed his silence in the face of Richard's accusatory statements to his surprise. Defendant's testimony was impeached by his admission that he had been previously convicted for burglary and had served a term in the state prison.

The sole contention on appeal is that the admission into evidence of the second of defendant's recorded telephone conversations with Richard constitutes reversible error in view of the rule announced in *People* v. *Dorado, supra,* 62 Cal.2d 338. The People admit that since the record is silent as to whether the defendant was advised of his rights, it must be presumed that he was not so advised.

Defendant contends that the admission of the recording was prejudicial per se as his statements to Richard constituted a confession. ■ A confession is a statement made by a defendant disclosing his guilt of the crime with which he is charged and excluding the possibility of a reasonable inference to the contrary (*People* v. *Beverly,* 233 Cal.App.2d 702

at pp. 713-714 [43 Cal.Rptr. 743]; *People* v. *Anderson,* 236 Cal.App.2d 419 [46 Cal.Rptr. 1]). ▉ A statement of guilty conduct containing only facts from which guilt may be inferred is an admission rather than a confession (*People* v. *Wilkins,* 158 Cal. 530 at pp. 534-535 [111 P. 612]). ▉ During his conversation with Richard, defendant did not admit any of the elements of the crime of furnishing marijuana to a minor. There were only his statements to Richard asking Richard not to turn him over to the police, his telling Richard to keep his mouth shut, his assertions that the police did not suspect him, and his offer to send Richard some money, all of which were circumstances from which his knowledge and involvement in the matter could be inferred. It follows that defendant's various statements in the telephone conversation constituted admissions only.

*People* v. *Stewart,* 62 Cal.2d 571 [43 Cal.Rptr. 201, 400 P.2d 97], holds that the critical or accusatory stage, at which point under *Dorado* a defendant must be informed of his rights to counsel and to remain silent, is reached when the officers have arrested the suspect and undertaken a process of interrogation that lends itself to eliciting incriminating statements. *Stewart, supra* (at pp. 578-579), also indicates that the proper test of whether the officers had undertaken such a process of interrogation is an objective one turning upon the total situation enveloping the questioning and that such factors as the length, place and time of the interrogation, the nature of the questions, the conduct of the police, and all other relevant circumstances must be considered.

Defendant concedes that he was not in custody at the time of the telephone conversation. The People argue that this fact alone prevents the application of the *Dorado* rule. However, as *Stewart, supra* (at p. 577), indicates that the accusatory process may be undertaken either before or after arrest, we must consider the total situation (*People* v. *Mora,* 232 Cal.App.2d 400 [42 Cal.Rptr. 725]; *People* v. *Beverly, supra; People* v. *Katz,* 234 Cal.App.2d 413 [44 Cal.Rptr. 354]).

▉ Here, at the time the telephone call to defendant was initiated, the officers knew that someone had furnished narcotics to Richard. They were investigating on the basis of Richard's oral statement that defendant was the perpetrator of the offense. The purpose of the call was to permit them to substantiate or vitiate this accusation (cf. *United States* v. *Konigsberg* (3rd Cir. 1964) 336 F.2d 844, 853; *People* v. *Beverly, supra,* p. 716). Understandably they did not choose

to take defendant into custody solely on the basis of the juvenile's declaration.

It follows that at the time of the second telephone call to defendant, the police were still engaged in the investigation of an unsolved crime. Even though the officers did not have any other prime suspect at that time, they were not yet accusing defendant (*People* v. *Danielson,* 233 Cal.App.2d 329 at p. 331 [43 Cal.Rptr. 644]). The inquiry was still investigatory and had not reached the accusatory or critical stage. ■ The fact that at the investigatory stage statements which may be damaging are made by one who is later accused does not render the declarations inadmissible (*People* v. *Jones,* 232 Cal.App.2d 379, 392 [42 Cal.Rptr. 714]).

■ In addition, there was no process of interrogation by the police as such a process is defined in *Stewart.* There was merely a series of narrative statements by Richard concerning the fact that he was in custody and did not wish to be punished for something he did not do, which elicited responses from defendant indicating defendant's involvement. We conclude that neither the accusatory stage nor the required process of interrogation characterized this case at the time the recording was taken and that it was free of the *Dorado* taint (*People* v. *Katz, supra; People* v. *Fork,* 233 Cal.App.2d 725 [43 Cal.Rptr. 804]; *People* v. *Jones, supra; People* v. *Danielson, supra*).

■ No claim of error can be predicated on the manner in which the recording was obtained. The conversation was recorded with Richard's permission. There is no violation in recording a telephone conversation when one of the participants to the conversation consents to or directs its overhearing or preservation (*People* v. *Cooper,* 234 Cal.App.2d 587 at pp. 605-606 [44 Cal.Rptr. 483]; *People* v. *McShann,* 177 Cal.App.2d 195 [2 Cal.Rptr. 71]; *People* v. *Malotte,* 46 Cal.2d 59 at p. 64 [292 P.2d 517]). Richard's consent was not negated by the fact that he was under arrest (*Black* v. *United States* (9th Cir. 1965) 341 F.2d 583).

The judgment is affirmed.

Shoemaker, P. J., and Agee, J., concurred.